UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| RONALD G. WARREN )<br>(Social Security No. XXX-XX-1219),  )<br>   )<br>Plaintiff,   )<br>   )<br>vs.   )<br>   )<br>CAROLYN W. COLVIN,   )<br>Acting Commissioner of Social   )<br>Security,[1]   )<br>   )<br>Defendant.   ) | 3:12-cv-71-WGH-RLY |

### ENTRY ON JUDICIAL REVIEW

This matter is before the Honorable William G. Hussmann, Jr., pursuant to the parties' consents and an order referring the case on April 23, 2013. (Docket No. 20).  Ronald G. Warren seeks judicial review of the final decision of the Commissioner of Social Security, which found him not disabled and therefore not entitled to Disability Insurance Benefits or Supplemental Security Income (collectively, "benefits") under the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*

For reasons stated below, the Commissioner's decision is **AFFIRMED**.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure Rule 25(d), Colvin is automatically substituted as the Defendant in this suit.

I. Background

    A. Procedural History

Warren applied for benefits on July 10, 2009. (R. at 9). He alleged he became disabled on March 7, 2003, but later amended the disability onset date to February 8, 2008. (R. at 9, 190). His application was denied initially and upon reconsideration. (R. at 94-97, 105-11). On November 23, 2010, and March 22, 2011, an Administrative Law Judge ("ALJ") held a hearing and supplemental hearing, respectively, at which Warren and a vocational expert ("VE") testified. On March 30, 2011, the ALJ issued his opinion finding that Warren was not disabled. (R. at 23). The Appeals Council denied Warren's request for review on April 4, 2012 (R. at 1-4), leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. §§ 404.955(a), 404.981. As a final decision, jurisdiction is proper in this court. 42 U.S.C. § 405(g).

    B. ALJ Findings

The ALJ's decision included the following findings: (1) Warren had not engaged in substantial gainful activity since February 8, 2008, the alleged disability onset date (R. at 11); (2) Warren had the following severe impairments: diabetes mellitus; obesity; narrowing of the L4-5 and L5-S1 disc spaces; multilevel spurring of the vertebral margins; narrowing and sclerosis of the lower facet joints; mild compression deformities of superior endplates of L1 and L2; hypertension; mild congestive heart failure; bereavement; borderline intelligence; polysubstance dependence (in sustained full remission); osteoarthritis of the right knee and of the hip; and greater tronchanteric [*sic*]

bursitis (R. at 11-12); (3) none of these impairments met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1 listings" or "listings") (R. at 12-15); (4) Warren had a residual functional capacity ("RFC") to do medium work with the following limitations:  he can understand, remember, and carry out simple, repetitive tasks; and he can maintain concentration, persistence, and pace for such tasks with no more than average production standards (R. at 15-23); (5) Warren was unable to perform any past relevant work as defined by 20 C.F.R. §§ 404.1565, 416.965; (6) Warren was 44 years old on the amended alleged disability onset date; (7) he has at least a high school education and was able to communicate in English; (8) transferability of job skills was not relevant because the Medical-Vocational rules supported a finding of "not disabled" regardless of whether Warren's skills were transferable (R. at 23); and (9) considering Warren's age, education, work experience, and RFC, there existed significant jobs in the national economy he could perform.  (R. at 23-24).  Based on these factual findings, the ALJ concluded Warren was not disabled.

## II.     Legal Standards

In order to qualify for disability benefits, Warren must establish that he suffered from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  To establish disability,

the claimant must present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on Warren during steps one through four; only after Warren has met his burden on these steps does the burden shift to the Commissioner for step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

### III. Analysis

Warren raises four claims on appeal: (1) that the hypothetical posed to the VE was so flawed that it invalidates the ALJ's Step Five analysis; (2) the ALJ improperly weighed Dr. Rang's opinion; (3) the ALJ made an improper credibility determination and erred in using Warren's daily activities in determining his RFC; and (4) the ALJ denying Warren's request for IQ testing meant his determination that Warren failed to meet Listing 12.05 was not supported by substantial evidence.

### A. The hypotheticals presented to the VE were not flawed, and the ALJ was entitled to rely on them at Step Five.

In the hypotheticals posed to the VE, the ALJ accounted for his finding that Warren had moderate difficulty with concentration, persistence, and pace (R. at 15, 22) by limiting the hypotheticals to medium or light unskilled simple repetitive tasks. (R. at 81-82; 84-87). The VE testified that, given Warren's limitations, there were significant jobs in the national economy that he could perform. (R. at 23-24, 83, 85-86). Warren argues that this hypothetical is misleading and inaccurate, since it does not account for his borderline intelligence and his ability not only to learn how to do the tasks, but to accomplish them consistently over an extended period of time. Warren relies on *O'Connor-Spinner v. Astrue*, in which the Seventh Circuit ruled that a similar hypothetical was insufficient, since it did not account for his significant depression-related problems with concentration, persistence, and pace. 627 F.3d 614, 620-21 (7th Cir. 2010). Because of the hypothetical's inaccuracy,

Warren claims, the ALJ cannot rely on the VE testimony to assess whether there are significant jobs in the national economy he can perform, and thus the ALJ has not met his Step Five burden.

*O'Connor-Spinner* is inapposite for two reasons. First, unlike in *O'Connor-Spinner*, where the ALJ omitted her "moderate limitation on concentration, persistence and pace from the hypothetical," 627 F.3d at 618, the ALJ in this case said that Warren could "understand, remember, and carry out unskilled work *and maintain concentration, persistence, and pace for such work*." (R. at 82 (emphasis added)). Second, Warren is not nearly as limited as the *O'Connor-Spinner* plaintiff, who had an extensive history of depression and treatment with antidepressants; in addition, examination by a state psychologist found "[h]er immediate memory and general information . . . were poor." *O'Connor-Spinner*, 627 F.3d at 617. In this case, Dr. Albert Fink, the Commissioner's examining psychologist, concluded in his evaluation that any mental limitations Warren had were no more than mild. (R. at 487-88). The moderate limitations found by the ALJ were more generous to Warren than had the ALJ solely relied on Dr. Fink's opinion. Given the absence of any significantly limiting mental impairment, the ALJ limiting the hypothetical to unskilled work and mentioning concentration, persistence, and pace limits was sufficient. Thus, the VE's testimony constituted substantial evidence for the ALJ to rely on at Step Five, and the ALJ did not err in doing so.

### B.     The ALJ properly weighed Dr. Rang's opinion.

Warren claims the ALJ erred in two respects when he assigned little weight to the opinion of his treating physician, Dr. Albert Rang.[2]  First, Warren claims that the ALJ improperly weighed Dr. Rang's opinion because his examination was done at the request of Warren's attorney.  Warren is correct that a claimant or his representative soliciting an opinion is not sufficient reason to belittle or ignore the findings.  *Punzio v. Astrue*, 630 F.3d 704, 712-13 (7th Cir. 2011).  However, Warren had only been examined by Dr. Rang once; that examination happened on the same day as his first hearing.  The ALJ evaluated Dr. Rang's report in conjunction with other medical evidence and concluded that Dr. Rang's opinion, specifically his conclusion that Warren could not work for more than five hours per day, was inconsistent with that other evidence.  (R. at 22-23).  Warren offers no evidence that his attorney's solicitation of the opinion was the ALJ's motivation for discounting Dr. Rang's opinion, so the ALJ's decision cannot be reversed on this ground.

Second, Warren argues that the ALJ rejected Dr. Rang's opinion solely because Dr. Rang opined that Warren is disabled, a determination reserved to the Commissioner,  20 C.F.R. § 404.1527(e),[3] and that this violated the treating physician rule.  The treating physician rule is a two-step process that an ALJ

---

[2] Warren claims that the ALJ rejected Dr. Rang's RFC; however, in his decision, the ALJ assigned his opinion little weight.  (R. at 23).

[3] At the time of the decision, the regulation reserving the finding of disability to the Commissioner was codified at 20 C.F.R. § 404.1527(e).  Subsequently, the regulation was changed, and 20 C.F.R. § 404.1527(d), (e), and (f) were recodified unchanged at 20 C.F.R. § 404.1527(c), (d), and (e), respectively.

7

must undertake in assessing a claimant's RFC if a treating physician's opinion is in the record.  First, the ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence on the record.  If so, the opinion is to be given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).  If not, the ALJ must consider several factors in deciding how much weight to give the opinion, including:

> (i)  the frequency of examination and the length, nature and extent of the treatment relationship;
> (ii)  the evidence in support of the treating physician's opinion;
> (iii)  the consistency of the opinion with the record as a whole;
> (iv)  whether the opinion is from a specialist; and
> (v)  other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2nd Cir. 2004); 20 C.F.R. § 404.1527(d).

Contrary to Warren's accusation, the ALJ's application of the treating physician rule was reasonable and well-supported.  Disability Determination Bureau consulting physicians M. Brill and J.V. Corcoran reviewed Warren's medical records through the end of 2009 and concluded he could perform a full range of medium work.  (R. at 432-39).  The ALJ assigned their opinions significant weight.  (R. at 22). Moreover, Dr. Rang's conclusions about Warren's limitations were at least somewhat belied by other findings from his examination, namely that despite the lumbar narrowing, Warren's back had "excellent strength, normal sensation, and full range of motion."  (Defendant's Memorandum at 8 (citing R. at 494-95)).  Therefore, the ALJ's conclusion that

8

Dr. Rang's opinion was inconsistent with substantial record evidence—and thus was not entitled to controlling weight—was proper.

As noted above, Dr. Rang only examined Warren once. Dr. Rang's conclusion that he had been suffering from hip or knee pain for several years (R. at 493) contrasts with a complete absence of treatment records for either his hip or his knee since the alleged disability onset date. Short treatment history, lack of internal support, and inconsistency with other record evidence are valid reasons to discount an opinion, 20 C.F.R. § 404.1527(d)(2)(i), (3-4), and the court does not find that the ALJ improperly weighed Dr. Rang's opinion.

### C. ALJ did not make an improper credibility finding or improperly consider Warren's daily activities.

Warren claims that the ALJ failed to properly assess the credibility of his statements in making his RFC finding. Specifically, the ALJ used boilerplate language in discussing his assessment of Warren's credibility, writing:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 17). Warren claims this language rendered the ALJ's assessment of his credibility meaningless and deprived this court of meaningful review, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), making remand appropriate.

Assessing a claimant's credibility in the ALJ's RFC assessment is a two-step process. First, the ALJ must determine whether the impairments found at Step Two could reasonably be expected to cause a claimant's symptoms. It is undisputed that the ALJ made such a determination. (R. at 17). Second, the ALJ must determine whether the claimant's statements about the intensity and persistence of symptoms are consistent with other evidence. 20 C.F.R. § 404.1529(a). The ALJ is in a unique position to assess the claimant's veracity and forthrightness. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

"[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations and internal quotation omitted). In this case, the ALJ examined Warren's claimed symptoms against the bulk of the medical evidence. He found Warren's claimed persistence and intensity of symptoms to be incompatible with his sporadic medical treatment since the alleged disability onset date, the opinions of examining and non-examining doctors, his performance of daily activities and carpentry work for friends, his work at church, and his weight loss due to diet and exercise. (R. at 15-23). The ALJ's extensive discussion built a logical bridge between the record evidence and his

10

conclusion that Warren's statements were contrary to the great weight of that evidence. The ALJ's use of boilerplate language, while perhaps subject to appellate criticism, was harmless in this case. *See Richison v. Astrue*, 462 Fed. App. 622, 625-26 (7th Cir. 2012).

Warren also briefly alleges that the ALJ erred in giving great weight to Warren carrying out daily activities and the fact he is active in his church, noting that "[t]hese activities are in no way similar to the duties of a job." (Plaintiff's Brief at 5); *see also Hughes v. Astrue*, 705 F.3d 276, 278-79 (7th Cir. 2013). However, it is clear from reviewing the record that most of the ALJ's discussion of daily activities (R. at 13) was in determining Warren did not meet Listings 12.02, 12.04, or 12.09. All three listings have "marked restriction of activities of daily living" as a way for Warren to meet his Step Three burden that he met or equaled a listing. 20 C.F.R. Part 404, Subpart P, Appendix 1 Listings 12.02B, 12.04B, 12.09B. The ALJ's discussion of Warren's daily activities was thus necessary and proper, and the court finds no error in the discussion.

### D.  The ALJ did not commit reversible error in denying Plaintiff's request for IQ testing.

Finally, Warren argues that substantial evidence does not support the ALJ's Step Three finding that Warren's impairments did not meet or equal Listing 12.05, mental retardation. Listing 12.05 requires a claimant to prove two elements. First, a claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially

11

manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404, Subpart P, Appendix 1 Listing 12.05. If a claimant makes this threshold showing, he must then demonstrate that he meets at least one of the four sub-classifications. *Id.* at Listing 12.05(A-D).

The ALJ determined Warren's borderline intelligence was a severe impairment at Step Two (R. at 11-12), and as a child his Intelligence Quotient ("IQ") scores ranged from 62 to 75, slightly above and below the level for mental retardation. (R. at 499-501). However, he had not had an IQ test as an adult, and Warren's attorney requested a test be conducted and be considered by the ALJ; the ALJ denied this request. (R. at 501). Warren argues that the denial meant the ALJ failed to fully develop the record, and thus there was not substantial evidence to support the ALJ's Step Three determination that he did not meet Listing 12.05(C).[4]

The ALJ does have "a basic obligation to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.1997). However, courts generally respect the Commissioner's reasoned judgment in determining how much evidence to collect. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). The Commissioner argues that because Warren did not require special education in the last ten years of his education, and because of the evidence

---

[4] Listing 12.05(C) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.05(C).

12

regarding Warren's daily activities and past history of semi-skilled jobs, he failed to demonstrate deficits in adaptive functioning. (R. at 39-42, 47, 51-52, 59-62, 80-81). Because adaptive functioning deficits are more often the presenting symptoms for mental retardation, AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39-40 (6th ed. 1994), the Commissioner argues Warren failed to meet the threshold determination for Listing 12.05.

    This is a close call, and a recent Southern District of Indiana case is instructive. In *Savage v. Astrue*, the court ruled that the ALJ erred in not supplementing the record because "[t]he record was clear that there were issues with Savage's intellectual ability and that her functioning was affected by it." 2012 WL 993103, at * 3 (S.D. Ind. Mar. 22, 2012). In this case, the record was, at best, ambiguous about those issues. The VE at the second hearing said Warren's past semi-skilled work at the highway department would be too varied for him to do the work continuously (R. at 512), and Warren graduated high school at the age of 20. (R. at 500). However, besides bad grades he received in high school (R. at 500), Warren did not present evidence of continuing constraints on his intellectual ability after second grade. Therefore, the ALJ's decision that Warren did not meet the Appendix 1 Listing 12.05 threshold determination was not clearly erroneous, and the ALJ did not fail to develop the record by not ordering an IQ test.

    Moreover, the ALJ referenced substantial evidence that Warren's borderline intelligence did not seriously affect his daily functioning, including

his activities of daily living and history of semi-skilled work, even though Warren could not return to that work. (R. 18, 21-22). Because the ALJ's decision that Warren did not meet the threshold requirement was supported by substantial evidence, the ALJ's determination must be upheld.

## IV. Conclusion

For the foregoing reasons, the ALJ's decision that Warren is not disabled is **AFFIRMED**. Judgment consistent with this Entry shall now ensue.

**SO ORDERED** the 9th day of July, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Distribution to all ECF-registered counsel of record via email.**